IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

February 24, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

STATE FARM GENERAL INSURANCE ) C/A NO 03A01-9807-CH-00227
COMPANY, )
)
    Plaintiff-Appellee, )
)
) APPEAL AS OF RIGHT FROM THE
v. ) HAMILTON COUNTY CHANCERY COURT
)
)
)
)
LEILA JUNE WOOD, )
) HONORABLE HOWELL N. PEOPLES,
    Defendant-Appellant. ) CHANCELLOR

For Appellant

STUART F. JAMES
Manuel & James, PLLC
Chattanooga, Tennessee

For Appellee

JOHN D. BARRY
Milligan, Barry, Hensley &
  Evans
Chattanooga, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                             Susano, J.

1

This declaratory judgment action was filed by State Farm General Insurance Company ("State Farm") against its insured, the defendant Leila June Wood ("Wood").  It was prompted by Wood's filing of a claim for a fire loss to her mobile home.  The trial court found that a misrepresentation regarding the insured's prior loss history, made by Wood in her application for insurance, had increased State Farm's risk of loss pursuant to T.C.A. § 56-7-103[1]; accordingly, the trial court declared the subject policy void *ab initio* and held that Wood was not entitled to a recovery.  Wood appeals, contending that the trial court erred in failing to grant her motion for a directed verdict, and in finding that State Farm had suffered an increased risk of loss as a consequence of the misrepresentation.  We affirm.

## I.  *Facts*

On November 24, 1986, Wood and her husband[2] met with State Farm agent Ed Sorrick ("Sorrick") and filled out an application for insurance on their mobile home.  The application contains the following question:  "Has the applicant had any losses, insured or not, in [the] past three years?"  On the Woods' application, the box "No" was checked next to this

---

[1] T.C.A. § 56-7-103 provides as follows:

> No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

[2] Mr. Wood passed away in 1990, prior to the fire that led to the filing of the subject claim.

2

question.  Sorrick testified that he had specifically asked the Woods whether they had suffered any losses within the last three years, and that they had responded that they had not.  Wood, on the other hand, testified that Sorrick had not asked that particular question, but that she voluntarily had told him about the earlier fire.  In any event, the question is clearly answered in the negative on the application.  The parties stipulated that either Mr. or Mrs. Wood signed the application.[3]

Contrary to the representation in the application, the Woods had suffered a loss approximately five weeks earlier, on October 19, 1986, when their home was destroyed by fire.  Sorrick testified that he was unaware of any earlier fire losses by the Woods.[4]  State Farm approved the application and issued a policy of insurance on the subject property.

On April 23, 1993, Wood's home burned.  Wood subsequently filed a claim with State Farm for approximately $82,000.  In the course of State Farm's adjusting of the claim, which included a routine investigation into Wood's loss history, Wood informed State Farm of the October, 1986 fire loss.

II.  *Procedural History*

---

[3]Wood suggests in her brief that the application may have been signed in blank.  However, she fails to point to any evidence in the record to support this contention; nor do we find any.  The only evidence relevant to this point is found in the testimony of Sorrick, who specifically stated, "[w]e had completed all the questions on the application before they signed it."  Wood's argument on this issue is without merit.

[4]Apparently, the Woods had had another fire in 1979.  However, the question on the application asked only about losses within the past three years.  The 1979 fire was outside the temporal scope of the question.

State Farm denied Wood's claim and filed this action to
have the policy declared void *ab initio*.  Wood filed a
counterclaim seeking, among other things, full payment under the
policy and recovery for State Farm's alleged bad faith in denying
the claim.  Following the resolution of various pre-trial
matters, the case proceeded to trial before a jury.  As indicated
earlier, Sorrick testified that the Woods had signed the
completed application after stating that they had not sustained
any fire losses within the prior three-year period.  Pat Hughes,
a supervisor in underwriting and operations for State Farm, also
testified on behalf of the insurance company.  He maintained that
the most important question on the application is the one
regarding prior losses.  Hughes testified that a policyholder who
has suffered prior fire losses is more likely to have additional
fire losses in the future.  He stated that State Farm needs all
relevant information to make its decision as to whether to issue
a particular policy; thus, if the agent is unaware of prior
losses, he or she does not have all of the material facts and
cannot make an informed decision.  Therefore, according to
Hughes, a lack of information regarding prior losses would
materially affect the decision whether to issue the policy.

At the close of State Farm's proof, Wood moved for a
directed verdict.  The trial court denied her motion.  Wood then
took the stand to testify on her own behalf; shortly thereafter,
however, she violated a pretrial order by stating, in the
presence of the jury, that she had cancer.  As a result, the
trial court declared a mistrial.  The parties nevertheless agreed
to proceed with the issue of whether the representation in the

4

application had increased State Farm's risk of loss.[5]  The following discussion took place among the trial judge and counsel for both sides:

> THE COURT: We're going to take a ten-minute recess and then is there any reason why we can't go ahead and proceed with the issue for the court only, and that is, the issue concerning the increased risk?
>
> MR. JAMES [attorney for Wood]: I don't see why not, Your Honor.
>
> MR. BARRY [attorney for State Farm]: No.  I think we can go ahead and do that.
>
> THE COURT: All right.

Following this colloquy, Wood offered her own testimony, as well as that of Phillip Braswell, the State Farm claims representative who had spoken with Wood after the April, 1993 fire.

As indicated earlier, the trial court determined that "the misrepresentation of past loss history did cause an increase in the insurer's risk of loss in this case."  It held that the subject policy was void from its inception and that Wood thus was precluded from recovery.  The trial court also dismissed Wood's counterclaim, and Wood appealed.

### III.  *Applicable Law*

---

[5]Whether a misrepresentation increased the risk of loss pursuant to T.C.A. § 56-7-103 is a question of law for the court.  *Sine v. Tennessee Farmers Mut. Ins. Co.*, 861 S.W.2d 838, 839 (Tenn.App. 1993); *Loyd v. Farmers Mut. Fire Ins. Co.*, 838 S.W.2d 542, 545 (Tenn.App. 1992).  Conversely, whether a misrepresentation was made with the intent to deceive is a question of fact. *Womack v. Blue Cross and Blue Shield of Tennessee,* 593 S.W.2d 294, 295 (Tenn. 1980); *Spellmeyer v. Tennessee Farmers Mut. Ins. Co.*, 879 S.W.2d 843, 848 (Tenn.App. 1993).

T.C.A. § 56-7-103 provides that

> [n]o written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, *or* unless the matter represented increases the risk of loss.

(Emphasis added.) It is clear that the language of the statute is disjunctive, *i.e.*, the insurer may show either 1) that the misrepresentation was made with the intent to deceive, *or* 2) that the matter represented increased the risk of loss. ***Id.; see Clingan v. Vulcan Life Ins. Co.***, 694 S.W.2d 327, 331 (Tenn.App. 1985). In this case, it is not disputed that the representation in the application regarding prior losses was false; thus, the question for the court was whether, as a matter of law, the misrepresentation increased State Farm's risk of loss.

A misrepresentation made in an application for insurance increases the risk of loss "when it is of such importance that it 'naturally and reasonably influences the judgment of the insuror in making the contract.'" ***Sine v. Tennessee Farmers Mut. Ins. Co.***, 861 S.W.2d 838, 839 (Tenn.App. 1993)(quoting ***Seaton v. National Grange Mut. Ins. Co.***, 732 S.W.2d 288, 288-89 (Tenn.App. 1987)); ***Loyd v. Farmers Mut. Fire Ins. Co.***, 838 S.W.2d 542, 545 (Tenn.App. 1992). As stated in ***Loyd***,

> [i]t is not necessary to find that the policy

6

> would not have been issued if the truth had
> been disclosed.  It is sufficient that the
> insurer was denied information which it
> sought in good faith and which was deemed
> necessary to an honest appraisal of
> insurability.

*Id.*  In *Loyd*, this Court held that the insurer was justified in denying coverage on a fire insurance claim, based upon a material misrepresentation regarding prior losses that was made by the insured in the application for insurance.  *Id.* at 545-46.  We quoted with approval the following statement from 45 C.J.S., Insurance § 534: "...untrue statements as to prior losses by fire are material, and will preclude recovery...."  *Loyd*, 838 S.W.2d at 545.

IV.  *Analysis*

Upon review of the record in this case, we are of the opinion that the trial court correctly determined that the misrepresentation in the application for insurance increased State Farm's risk of loss within the meaning of T.C.A. § 56-7-103.  This conclusion is supported by the testimony of Pat Hughes, who maintained that State Farm cannot make an informed decision whether to issue a policy without information regarding a potential insured's prior loss history.  Hughes testified that the inquiry regarding prior losses is the most important question on the application.  He also testified that a homeowner with a history of fire losses is more likely to suffer additional fire losses in the future.  This testimony was uncontradicted.

Wood contends that some of Hughes' testimony was

improperly predicated on a hypothetical question that was not based upon the correct set of facts. Specifically, she takes issue with the question in which counsel for State Farm asked Hughes what would have happened if he had learned that the potential insured had suffered a $50,000 fire loss approximately six weeks earlier, *as well as two other fire losses between 1979 and 1986.* Hughes responded that he would have recommended against issuing the policy. Wood insists that because the application only requested information on losses that had occurred within the last three years, she would not have been required to disclose any information regarding losses prior to 1983; thus, so the argument goes, Hughes' testimony does not establish that State Farm was harmed by Wood's failure to reveal the earlier 1986 loss.

We cannot agree with this contention. In our opinion, regardless of whether the hypothetical was based on a correct set of facts, Hughes' overall testimony establishes that Wood's failure to disclose the October 19, 1986, fire loss, standing alone, increased State Farm's risk of loss. This is true even without considering Hughes' response to the hypothetical question at issue.

Under the circumstances of this case, it is clear that the information -- or lack thereof -- regarding Wood's prior fire loss on October 19, 1986, was of such importance as to "naturally and reasonably" influence the judgment of State Farm in issuing the subject policy. *See* **Sine**, 861 S.W.2d at 839; **Loyd**, 838 S.W.2d at 545. Thus, Wood's failure to disclose the prior loss

8

had the effect of increasing State Farm's risk of loss, in accordance with T.C.A. § 56-7-103. We therefore hold that the trial court correctly determined, based upon the increase in State Farm's risk of loss, that Wood was not entitled to recover and that the subject policy was void from its inception. *See* T.C.A. § 56-7-103.

Wood also takes issue with the trial court's denial of her motion for a directed verdict. In this connection, she argues that the record does not contain competent testimony that the misrepresentation was intentional, or that there was an increase in the risk of loss.

Our standard of review of a trial court's decision on a motion for directed verdict is well-settled. A directed verdict is appropriate only when the evidence is susceptible to but one conclusion. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Long v. Mattingly*, 797 S.W.2d 889, 892 (Tenn.App. 1990). We must "take the strongest legitimate view of the evidence favoring the opponent of the motion." *Id.* In addition, all reasonable inferences in favor of the opponent of the motion must be allowed, and all evidence contrary to the opponent's position must be disregarded. *Eaton*, 891 S.W.2d at 590; *Long*, 797 S.W.2d at 892.

Our review of the record persuades us that the trial court correctly denied Wood's motion for a directed verdict. We have already found that the record, as of the time when the motion was made, supports a finding that the misrepresentation

9

did in fact increase State Farm's risk of loss.  Clearly, therefore, a directed verdict in Wood's favor on this issue was not warranted.  As to the question of Wood's intent, we cannot say -- allowing all reasonable inferences in State Farm's favor -- that the evidence supports only the conclusion that her misrepresentation was unintentional.  *Eaton*, 891 S.W.2d at 590; *Long*, 797 S.W.2d at 892.  On the contrary, the evidence is susceptible to several reasonable conclusions, one of which is that Wood intentionally concealed the existence of a fire loss that had occurred only five weeks earlier.  Under such circumstances, a directed verdict in Wood's favor would have been inappropriate.  In any event, the trial court found in favor of State Farm based upon the second prong of T.C.A. § 56-7-103 -- an increase in the risk of loss -- without making any findings as to whether the misrepresentation was intentional.  We find and hold that this basis is sufficient to sustain the judgment of the trial court, and that a directed verdict was not warranted in this case.

## V.  *Conclusion*

The judgment of the trial court is affirmed in all respects.[6]  Costs on appeal are taxed to the appellant.  This case is remanded to the trial court for enforcement of the judgment and the collection of costs assessed there, all pursuant to applicable law.

---

[6]State Farm's motion to consider post-judgment facts is denied.  The facts which the motion seeks to raise are not directly relevant to the appellant's issue on appeal.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.